UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON


CIVIL ACTION NO. 08-222-GWU


ELLEN F. CLEMONS,                                                    PLAINTIFF,


VS.                                  **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.


## INTRODUCTION

Ellen Clemons brought this action to obtain judicial review of an unfavorable

administrative decision on her applications for Disability Insurance Benefits (DIB)

and for Supplemental Security Income (SSI).  The case is before the court on cross-

motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.  Is the claimant currently engaged in substantial gainful activity?
    If so, the claimant is not disabled and the claim is denied.

2.  If the claimant is not currently engaged in substantial gainful
    activity, does he have any "severe" impairment or combination
    of impairments--i.e., any impairments significantly limiting his
    physical or mental ability to do basic work activities?  If not, a
    finding of non-disability is made and the claim is denied.

3.  The third step requires the Commissioner to determine
    whether the claimant's severe impairment(s) or combination of
    impairments meets or equals in severity an impairment listed

08-222  Ellen F. Clemons

    in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

08-222 Ellen F. Clemons

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

3

08-222  Ellen F. Clemons

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.

4

08-222  Ellen F. Clemons

Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th

Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563

provide that an individual with only off-and-on work experience is considered to

have had no work experience at all.  Thus, jobs held for only a brief tenure may not

form the basis of the Commissioner's decision that the plaintiff has not made out its

case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly

prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher

v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the

ways for the Commissioner to perform this task is through the use of the medical

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2

and analyze factors such as residual functional capacity, age, education and work

experience.

One of the residual functional capacity levels used in the guidelines, called

"light" level work, involves lifting no more than twenty pounds at a time with frequent

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting

most of the time with some pushing and pulling of arm or leg controls; by definition,

a person capable of this level of activity must have the ability to do substantially all

these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having

5

08-222 Ellen F. Clemons

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

08-222  Ellen F. Clemons

## DISCUSSION

Clemons filed applications for DIB and SSI on April 1, 2004 alleging a disability onset date of April 1, 2004.[1]  (Tr. 54-58, 204-207).  These applications were denied initially and upon reconsideration and the claimant sought administrative review.  On May 30, 2008, an Administrative Law Judge (ALJ) issued a decision denying social security benefits to Clemons.  (Tr. 12-19).  This denial decision became final for the administration when the Appeals Council found no reason for review on October 27, 2008.  (Tr. 5-7).  The claimant then filed this appeal to federal district court.

The ALJ concluded that Clemons, a former cashier/checker, suffered from impairments related to familial spastic paraparesis syndrome.[2]  (Tr. 14, 18). Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work.  (Tr. 15).  Since the claimant was found able to return to her past relevant work, she could not be considered totally disabled.  (Tr. 18-19).

The ALJ determined that Clemons was limited to light level work, restricted from a full range by (1) an inability to more than occasionally stoop, kneel, crouch

---

[1]The onset date was later amended to July 29, 2005.  (Tr. 12).

[2]Familial Spastic Paraparesis, also known as Hereditary Spastic Paraplegia or Familial Spastic Paraplegia, is a heterogeneous group of genetic disorders with the main feature being progressive spasticity in the lower limbs due to pyramid tract dysfunction. http://en.wikipedia.org/Familial_spastic_parapasis, last visited September 8, 2009.

and climb ramps or stairs; (2) an inability to ever crawl, balance and climb ladders, ropes or scaffolds; and (3) a need to avoid work at unprotected heights and hazardous machinery.  (Tr. 15).  These restrictions were presented to Vocational Expert Robert Breslin who testified that the plaintiff's past work as a cashier/checker could still be performed.  (Tr. 253-254).  The ALJ relied upon this information to support the denial decision.  (Tr. 18-19).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence through April 17, 2007. Therefore, the court must affirm this portion of the administrative denial decision.

Dr. Thadis Collins examined Clemons in September of 2005 and noted a history of low back pain with radiation into her right knee.  (Tr. 151).  The doctor found no physical evidence for significant restriction in tolerance for stooping, bending, reaching, sitting, standing, moving about, lifting, carrying, handling objects, or traveling.  (Tr. 151-152).  The ALJ's findings were consistent with this opinion.

Dr. Jeb Ross (Tr. 154) in September of 2005 and Dr. Timothy Gregg (Tr. 156) in February of 2006 each reviewed the record and opined that Clemons' physical problems were "less than severe."  These opinions also provide support for the administrative decision.

Treatment records from the Summit Medical Group, dated between April, 2004 and July, 2005, did not reveal the existence of more severe physical

08-222 Ellen F. Clemons

restrictions those found by the ALJ. (Tr. 137-144). Thus, these records do not support a claim of disabled status.

Clemons was treated at St. Elizabeth Medical Center in July of 2005. (Tr. 145-149). The plaintiff was noted to have suffered a minor head injury. (Tr. 148). Physical restrictions were not assessed.

Clemons was again seen at St. Elizabeth in March of 2006 for a right arm injury. (Tr. 157-160). Long-term physical restrictions were not assessed by the staff.

In December of 2006, Clemons was again admitted to St. Elizabeth with complaints of headache, dizziness, nausea, vomiting and an inability to articulate speech. (Tr. 161). Her blood pressure readings were very high. (Id.). A CT scan indicated a non-acute ischemic stroke. (Tr. 162). Physical examination indicated that the cranial nerves were intact. (Tr. 165). Sensation and muscle strength were preserved. (Id.). She was diagnosed as suffering from hypertensive urgency, ischemic stroke and a neurological disorder. (Tr. 161). Her blood pressure improved with medication. (Tr. 166). Long-term physical restrictions were not assessed. (Tr. 161-168).

Clemons later noted to a physician during an April, 2007 hospitalization that she experienced a complete recovery of her neurological symptoms following discharge from the hospital following the December stroke. (Tr. 177). Therefore, the time period prior to April, 2007 does not reveal more severe physical restrictions

9

than those found by the ALJ and the undersigned must affirm the administrative decision finding that the plaintiff was not disabled prior to this date.

On April 17, 2007, Clemons was again admitted to St. Elizabeth with complaints of bilateral extremity weakness, left upper extremity weakness and slurred speech. (Tr. 170). While a CT scan revealed no acute findings, her symptoms were consistent with those of an acute stroke. (Id.). An MRI scan of the brain revealed a new acute high right parietal cerebrovascular accident. (Id.). She was diagnosed as suffering from right parietal cerebrovascular accident, hypertension, hyperlipidemia, familial spastic paraparesis syndrome, hypokalemia, a history of basal cell carcinoma, and a history of a prior cerebrovascular accident in 2006. (Tr. 169).

On May 15, 2007, Clemons was once more hospitalized at St. Elizabeth with complaints of decreased and blurred vision and headache. (Tr. 182). Upon admission she was noted to be hypertensive with a blood pressure reading of 200/100. (Tr. 183). The plaintiff was reported to be unsteady walking and having weakness in the left arm and leg. (Id.). She also had difficulty speaking. (Id.). An MRI scan showed a small acute parietal stroke. (Id.). A urinary tract infection was also reported. (Tr. 180).

Clemons was also treated on several occasions by Dr. Brennan Burke of the Summit Medical Group. In June of 2007, Dr. Burke noted ataxia and vision loss.

08-222  Ellen F. Clemons

(Tr. 200).  Leg weakness and difficulty walking were reported in October of 2007.
(Tr. 196).

In April of 2008, Dr. Burke completed a Medical Assessment of Ability to do
Work-Related Activities Form.  The doctor identified a number of very severe
physical restrictions including an inability to ever lift or carry any weight, no ability
to stand or walk, and an inability to ever perform postural activities.  (Tr. 191-194).
These restrictions would preclude the past relevant work which was performed at
the light exertional level.  (Tr. 253).  Dr. Burke related these restrictions to dizziness
and arm and leg weakness.  (Tr. 191-194).

The ALJ rejected the opinion of Dr. Burke because he did not believe it was
well supported by objective medical data and relied instead on the more
comprehensive findings of Dr. Cox.  (Tr. 17).  As previously noted, the court agrees
that Dr. Cox, who saw the plaintiff in September of 2005, provides strong support
for a finding that Clemons was not disabled prior to April 17, 2007.  However, Dr.
Cox did not have the opportunity to consider the plaintiff's condition after the series
of strokes which began in December of 2006.  While the claimant appears to have
recovered well from the December, 2006 stroke, the treatment notes from Dr. Burke
and the St. Elizabeth hospitalization reports suggest a deterioration in Clemons's
condition after April 17, 2007.  At least some objective evidence supports Dr.
Burke's restrictions during this time frame.  Dr. Cox was unaware of these later
medical problems and, so, should not have been relied upon to offset the treating

11

08-222  Ellen F. Clemons

source.  The ALJ should at least have sought the advice of a medical advisor who had reviewed the entire record.  Therefore, a remand of the action for further consideration of the claimant's status after April 17, 2007 is required.

The undersigned concludes that the administrative decision should be affirmed in part to the extent that Clemons was found not disabled prior to April 17, 2007 and reversed and remanded in part for further consideration of her status after this date.  Therefore, the plaintiff's summary judgment motion will be granted to this extent and that of the defendant will be granted in part and denied in part.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 9th day of September, 2009.

**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**